**IN THE COURT OF APPEALS OF IOWA**

No. 23-0936
Filed July 26, 2023

**IN THE INTEREST OF E.B.,**
**Minor Child,**

**R.H., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka,

Associate Juvenile Judge.


        The mother appeals the termination of her parental rights.  **AFFIRMED.**


        MaryBeth A. Fleming of MaryBeth Fleming Law Office, P.C., Dubuque, for

appellant mother.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

        Kristy L. Hefel of Public Defender's Office, Dubuque, attorney and guardian

ad litem for minor child.


        Considered by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the mother's parental rights to E.B., born in 2022, under Iowa Code section 232.116(1)(e), (h), and (*l*) (2023).[1]  The mother appeals, arguing the grounds for termination were not proved or, alternatively, that she should get six more months to work toward reunification.  Our review is de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The mother, who was twenty-four years old at the time of the May 2023 termination trial, first started using methamphetamine a decade ago.  After a couple of years of use, she remained sober for a period of several years before relapsing when her mother died in 2020.  From then, her use of methamphetamine persisted, and the mother lost her rights to three children in 2022.  *See generally In re M.G.*, No. 22-0651, 2022 WL 2160684 (Iowa Ct. App. June 15, 2022).  She was pregnant with E.B. at the time.

E.B. was removed from the mother's custody in September 2022—about two months after his birth—when the mother tested positive for methamphetamine. The mother attended visits with E.B. regularly at first, but by December 2022, she stopped attending in-person visits with the baby.  The mother had no contact with E.B. or the Iowa Department of Health and Human Services from the end of December until February 2023.  At that time, the mother reported she was still using illegal substances and would be leaving town to begin inpatient treatment for substance abuse and mental health; a visit was set up, and she attended.  But the

---

[1] The father's parental rights were terminated in an earlier proceeding.  He has not appealed.

mother did not go to treatment. And she did not attend more visits. The mother saw E.B. one more time before moving to Texas on April 1.

At the termination trial on May 18, 2023, the mother reported living with her stepfather in Texas. She testified she had been sober since moving on April 1 and claimed to have been steadily employed for two to three weeks. The mother asserted she had appointments set up to begin outpatient drug treatment and mental-health treatment; the first appointments were scheduled for May 31 and June 1, respectively.

The juvenile court terminated the mother's parental rights, concluding the "[m]other basically did not dispute that the elements of the statutory grounds for termination had been met." Still, as the court ruled on the specific grounds, we consider the mother's challenge on appeal. We need to find only one ground supported by the record evidence to affirm. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to focus on paragraph (h), which allows the court to terminate a parent's rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). The mother challenges only the final element— whether E.B. could be returned to her custody. We easily conclude the child could not. Although the mother had been offered treatment services in the case involving

her other children to combat her substance use history, she still had not completed a substance-abuse evaluation or actively engaged in substance-abuse treatment during this case. The mother recognized she needed inpatient treatment, but she never entered any treatment program—either in Iowa or after she moved out of state in April 2023. And there had been many no shows and a lack of follow through to engage in mental-health treatment as urged by the department as a part of the mother's treatment plan. True, the mother testified she had been sober for one month and had made progress in other areas, such as her employment status; but she could only point to last-minute efforts to resolve her substance-abuse issues, which came too late given the statutory guidelines we must follow. Her move to Texas served as a barrier to reunification services and to a meaningful relationship with this young child. No drug tests were taken as the mother indicated she was using while she was in Iowa, and there was nothing to corroborate her testimony she was substance free in Texas. Without the ability to monitor her progress, we cannot say the child could be returned to her custody at the time of the termination trial. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018).

Shortly before the termination trial, the mother contacted the department and requested that they do a home study on her sister who she lived with in Texas, along with her stepfather. But by the termination trial, the sister had moved from the stepfather's home. No home study had been completed—or even started—on the stepfather's home. *See* Iowa Code § 232.158(1)(b), (c) (providing "the purpose and policy" of the interstate compact is for "the party states to cooperate with each other in the interstate placement of children" so "[t]he appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the

circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child [and] [t]he proper authorities of the state from which the placement is made may obtain the most complete information on the basis of which to evaluate a projected placement before it is made"). And the Interstate Compact on the Placement of Children prohibits a child from being "sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." *Id.* § 232.158(3)(d). As things stood at the time of the termination trial, E.B. could not be returned to the mother in Texas. So, the State proved the ground for termination under section 232.116(1)(h). *See In re Z.P.*, 948 N.W.2d 518, 525 (Iowa 2020) (concluding section 232.116(1)(h)(4) was satisfied when the parent was not in a position to take custody of the child at issue at the time of trial—even in a case without the characteristic "red flags" in termination cases).

The mother argues she should get six more months to work toward reunification. To grant the parent additional time, the court must be able to name "specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Like the juvenile court, we are unable to do so. The mother may have had a few weeks of sobriety under her belt at the time of the termination trial,[2]

---

[2] The juvenile court did not explicitly rule on the mother's credibility. It noted the mother did not have any test results or other evidence to support her testimony,

but she had yet to start substance-abuse or mental-health treatment. Any progress she made in the weeks leading up to the termination trial was new; there was not yet evidence she could sustain these positive changes. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (recognizing recent changes by the parent, in the face of long-term issues, are insufficient). And while we hope the mother achieves long-term sobriety, we will not gamble on E.B.'s future by delaying termination based on hope the mother will make lasting positive changes. *See In re D.W.*, 385 N.W.2d 570, 578 (Iowa 1986).

We affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

which we understand as an expression of some uncertainty as to reliability of the mother's claim.